UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRADEN

v.  No. 3:11cv884 (SRU)

MURPHY, et al.

## RULING ON MOTIONS TO DISMISS

This case involves a subpoena duces tecum that was served in connection with a divorce proceeding. The defendants in this case are Joseph Badolato, who was a party to the divorce proceeding,[1] and Daniel Murphy, Badolato's attorney. The plaintiff is Judith Braden, Badolato's former mother-in-law.

I held a hearing on the defendants' motions to dismiss on October 21, 2011. At that hearing, I ordered that the motions to dismiss would be treated as motions for summary judgment under Federal Rule of Civil Procedure 12(d). Upon further reflection, I have decided that the motions should instead be treated as motions to dismiss. Accordingly, I vacate my order converting the motions into motions for summary judgment.

For the reasons that follow, the motions to dismiss, docs. 12 and 16, are **DENIED in part, GRANTED in part, and DENIED without prejudice in part**. The motion to take deposition, doc. 32, is **DENIED AS MOOT without prejudice**.

I.   **Standard of Review**

---

[1] Although this fact is merely alluded to in the complaint, the Court "may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned,' such as the records of court proceedings." *Glover v. Conn. Dep't of Children*, 575 F. Supp. 2d 390, 392 n.1 (quoting Fed. R. Evid. 201(b)(2)).

The defendants bring motions to dismiss on two grounds: for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim under Rule 12(b)(6).

A. <u>Lack of Subject-Matter Jurisdiction</u>

The party who seeks to invoke a court's jurisdiction bears the burden of establishing that jurisdiction. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To survive a motion brought under Rule 12(b)(1), a plaintiff must allege facts demonstrating that the plaintiff is a proper party to seek judicial resolution of the dispute. *Id.*

B. <u>Failure to State a Claim</u>

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555,

570; *see also Iqbal*, 129 S. Ct. at 1940 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). *Plausibility* at the pleading stage is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II.  Background[2]

In 2008, Badolato, was engaged in a divorce proceeding. In order to gain information for the divorce proceeding, on or about October 1, 2008, Murphy served a subpoena duces tecum on Alltel Corporation. Braden was an Alltel customer at the time, and the subpoena asked Alltel to produce records pertaining to Braden's telephone communications. Alltel complied with that request.

On or about October 1, 2008, Murphy, acting on behalf of Badolato, executed a subpoena duces tecum on Verizon Communications, Inc. Braden was a Verizon customer, and the subpoena asked Verizon to produce records pertaining to her telephone communications, which Verizon did.

As a result of the two subpoenas, Braden claims that she suffered emotional distress and a loss of her personal privacy. She brings common-law claims for invasion of privacy and abuse of process, and possibly for intentional or negligent infliction of emotional distress. Braden seeks compensatory damages, punitive damages, and costs.

---

[2] Except where otherwise noted, all facts are drawn from the plaintiff's complaint.

**III.     Discussion**

   A.  <u>Amount in Controversy</u>

The defendants' primary contention is that this claim does not belong in federal court, because the amount in controversy is not enough to satisfy diversity jurisdiction. To invoke diversity jurisdiction, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). The party seeking to invoke the federal court's jurisdiction "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am. Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (internal quotation marks omitted). "The burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs. Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). That means that the party challenging jurisdiction must establish "'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab. Co.*, 303 U.S. 283, 288-89 (1938)). In other words, "a party opposing jurisdiction must show that, at the time the Complaint was filed, the 'legal impossibility' of a recovery satisfying the jurisdictional threshold was 'so certain as virtually to negative the plaintiff's good faith in asserting the claim.'" *Conn. Student Loan Found. v. Enter. Recovery Sys., Inc.*, No. 3:04cv712, 2011 WL 136372, at *4 (D. Conn. Apr. 11, 2011) (quoting *Scherer*, 347 F.3d at 397).

   The defendants' principal complaint is that Braden has not offered any basis to support her claim of damages. From the face of the complaint, it appears that the claim is based on the

emotional damage she felt as a result of the defendants' conduct, as well as punitive damages.[3] In support of their assertion, defendants cite *Fedor v. Amica Mutual Ins. Co.*, 3:01cv795, 2003 WL 77002 (D. Conn. Jan. 8, 2003), in which Judge Goettel dismissed the defendant's case for failure to achieve the amount in controversy requirement. In that case, the plaintiff alleged actual damages of $52,305 (although the Court believed the correct amount was more likely $28,305). The plaintiff sought to achieve the rest of the amount in controversy through emotional distress and punitive damages. Judge Goettel was unpersuaded. "Assertion of emotional distress claims have become routine in Connecticut litigation. Since they are amorphous and difficult to quantify, they arguably override the monetary requirements of federal jurisdiction. No authority is cited for this possibility and we do not endorse it." *Id.* at *2.

Although *Fedor* suggests that Braden's bald statement of emotional harm is not enough to satisfy the amount in controversy requirement, the decision was issued before *Scherer v. Equitable Life Assurance Soc'y of U.S.*, the Second Circuit case that set such a high bar for defendants seeking to dismiss a case for failure to achieve the amount in controversy. In that case, the Court stated that "even where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Scherer*, 347 F.3d at 397.

The defendants also cite to *Boguslavsky v. City of New York*, 173 F.3d 843, 1999 WL 197202 (2d Cir. Apr. 1, 1999), an unpublished summary order, in support of their argument. In that case, the plaintiff brought a claim related to the booting of his car, which caused $1,500 in damage to the car. The plaintiff claimed the remaining jurisdictional amount came from the emotional distress that resulted. The Court's opinion stated that there was no emotional distress

---

[3] "Claims for punitive damages merit 'closer scrutiny' when calculating the amount in controversy." *Bindrum v. American Home Assur. Co. Inc.*, No. 11-961, 2011 WL 4494487, at *2 (2d Cir. Sept. 29, 2011) (citing *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972)).

claim for those events – in other words, that one cannot get emotional distress damages at all from the booting of one's car. In contrast, invasion of privacy is clearly the kind of injury that gives rise to emotional distress damages.

Because they fail to meet the stringent test for showing that the amount in controversy is insufficient, the defendants' motion to dismiss the case for lack of subject matter jurisdiction is denied.

B. Abuse of Process

"An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Larobina v. McDonald*, 274 Conn. 394, 403 (2005) (internal quotation omitted). "[T]he gravamen of the action for abuse of process is the use of the legal process . . . against another *primarily* to accomplish a purpose for which it was not designed." *Id.* (quoting Restatement (Second) of Torts § 682 (1977)).

The defendants' principal contention here is that Braden has failed to allege an improper purpose. Braden instead has merely alleged that "the defendants used a legal process in an improper manner primarily for a purpose for which it was not designed, in violation of the Connecticut common law." She has not alleged any further specifics.

Defendants rely heavily on *Mozzochi v. Beck*, 204 Conn. 490 (1987). In that case, the Connecticut Supreme Court held that attorneys could be sued for abuse of process, even when they are bringing actions on behalf of clients. *Id.* at 495. The Court clarified, however, that an attorney's actions would "not give rise to a third party action for abuse of process unless the third party can point to specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation." *Id.* at 497 (emphasis added). The Court held that the

plaintiff's claim that the defendants had acted "for an unlawful purpose, to wit: to inflict injury upon the plaintiff and to enrich themselves and their said client although they knew that their said lawsuit was without merit" was too general of an allegation to satisfy the requirement that the use of the legal process was "<u>primarily</u> to accomplish a purpose for which it was not designed." *Id.* (internal punctuation omitted).

Examples of improper purposes include:

> (i) [U]sing the pleadings as leverage to coerce the payment of a debt or surrendering of property unrelated to the litigation; (ii) using reasonable force, excessive attachment or extortionate methods to enforce a right of action; or (iii) using the process to gain a collateral advantage extraneous to the merits, e.g., improper use of a subpoena.

*Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996) (internal citations omitted). Braden's assertion that "the defendants used a legal process in an improper manner primarily for a purpose for which it was not designed" is too general and conclusory to support an abuse of process claim.[4] Accordingly, the motion to dismiss the abuse of process claim is granted without prejudice to repleading.

C. <u>Invasion of Privacy</u>

The defendants next seek to dismiss the plaintiff's invasion of privacy claim. In Connecticut, there are four distinct types of invasion of privacy claims: (1) unreasonable intrusion upon the seclusion of another, (2) appropriation of another's name or likeness, (3) unreasonable publicity given to another's private life, or (4) publicity that unreasonably places another in a false light before the public. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (citing *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 128 (1982)).

---

[4] Braden argues that she was not involved in the litigation in question, and alleges that the defendants only sought her records in order to put pressure on her daughter. That allegation, however, is not in the complaint, and thus cannot be considered at the motion to dismiss stage.

Braden seeks to recover under the first type of claim: unreasonable intrusion upon the seclusion of another. Connecticut courts have interpreted that tort as intentional invasion "upon the solitude or seclusion of another or his private affairs or concerns if the intrusion would be highly offensive to a reasonable person." *Id.* (internal punctuation omitted).

The defendants argue that the conduct at issue here would not be highly offensive to a reasonable person. In support, they cite *Sorrentino v. Textron Lycoming*, No. 3:93cv2262, 1995 U.S. Dist. LEXIS 21754 (D. Conn. Mar. 24, 1995). In that case, Judge Covello granted summary judgment for the defendant-employer who had monitored the company phone records for calls placed by the plaintiff. Judge Covello, in his opinion, stated that "even if [the plaintiff] did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not one that society is prepared to recognize as 'reasonable.'" *Id.* at *9 (quoting *Smith v. Maryland*, 442 U.S. 735, 743 (1979)). Judge Covello also, however, made clear that his ruling was supported by the fact that the expectation of privacy in a workplace was reduced, that the defendant was merely reviewing its own records, and that the defendant had been prompted to review the records by a reasonable suspicion that the plaintiff had been stealing from the company.

The defendants next point to *Smith v. Maryland*, in which the Supreme Court held that the installation and use of a pen register by a telephone company does not constitute a "search" within the meaning of the Fourth Amendment, because a reasonable person has no expectation of privacy in the phone numbers they dial. 442 U.S. at 743. Admittedly use of a pen register is slightly less of an intrusion of privacy than viewing phone records: pen registers only record phone numbers that have been dialed, and, unlike a telephone record, do not register the length

of the call. Still, the Court's reasons for finding that a pen register was not an invasion of privacy apply equally to telephone records:

> Telephone users . . . typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes. Although subjective expectations cannot scientifically be gauged, it is too much to believe that telephone subscribers, under these circumstances, harbor any general expectation that the numbers they dial will remain secret.

*Id.*

Braden argues that this case is distinguishable from *Smith v. Maryland*, not only because it is a tort case instead of a constitutional case, but because Connecticut law specifically prohibits the unauthorized procurement of telephone records, thereby creating an expectation of privacy. Conn. Gen. Stat. § 16-247u(b) ("No personal shall: (1) Knowingly procure, attempt to procure, solicit or conspire with another to procure a telephone record of any resident of this state without the authorization of the customer to whom the record pertains.").

Braden acknowledges that the "unauthorized procurement" law does not apply to "any person acting pursuant to a valid court order, warrant or <u>subpoena</u>." Conn. Gen. Stat. § 16-247u(c) (emphasis added). At oral argument, the plaintiff alleged that the subpoenas were invalid because they were not accompanied by notice of the deposition, and if the plaintiff had had that notice, she would have had an opportunity to quash the subpoenas.

Braden did not allege in her complaint that the subpoenas were not accompanied by notice of the deposition. Indeed, her complaint did not allege that the subpoenas were invalid at all. Without that allegation, the plaintiff has not alleged a basis for me to conclude that her privacy was invaded.

Because Braden has failed to allege that the subpoenas were invalid, I need not decide at this time whether the examination of phone records with an invalid subpoena would constitute an

invasion of privacy under Connecticut law.  The motion to dismiss the invasion of privacy claim is granted without prejudice to repleading.

D. Emotional Distress

The defendants next seek to dismiss Braden's claim for emotional distress.[5]  It is unclear from the face of the complaint whether Braden is bringing either an intentional or negligent infliction of emotional distress claim.  In any case, neither claim can survive.

To prevail on a claim of intentional infliction of emotional distress, Braden must establish:

> (1) [T]hat the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

*Diamond v. Yale Univ.*, 66 Conn. App. 764, 765-66 (2001) (internal quotations omitted).  The question whether the defendants' conduct is "sufficient to satisfy the requirement that it be extreme and outrageous is initially" a determination for the court.  *Appleton v. Bd. of Educ. of Stonington*, 254 Conn. 205, 210 (2000).

The Connecticut Supreme Court has defined extreme and outrageous conduct as that which "exceeds all bounds usually tolerated by decent society." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (internal citation omitted).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*  The conduct must be such that "recitation of the facts to an average member of

---

[5] Only Badolato explicitly seeks to dismiss the emotional distress claim; it appears that Murphy does not believe the plaintiff to be making such a claim.  I will treat the motion to dismiss the emotional distress claim as a motion on behalf of both defendants.

the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*

None of the conduct in this case is sufficiently outrageous to satisfy the requirements of a claim for intentional infliction of emotional distress. Although Braden was clearly upset that her telephone records were divulged without her permission, that conduct is neither extreme nor outrageous, and any intentional infliction of emotional distress claim is dismissed.

To establish a claim for negligent infliction of emotional distress in Connecticut, Braden must demonstrate: (1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) that the plaintiff's distress was foreseeable; (3) that the emotional distress was severe enough that it might result in illness or bodily harm; and (4) that the defendant's conduct was the cause of the plaintiff's distress. *Carrol*, 262 Conn. at 444. Braden did not allege that the conduct here was so severe that it might result in illness or bodily harm, and therefore any claim for negligent infliction of emotional distress is dismissed with prejudice.

## IV.  Conclusion

For the reasons stated above, the motions to dismiss the case for lack of jurisdiction is denied. The motions to dismiss the case for failure to state a cause of action is granted without prejudice to the plaintiff filing an amended complaint within thirty days; the motions to dismiss the intentional and negligent infliction of emotional distress claims are granted with prejudice. The motion to take deposition is denied without prejudice as moot.

It is so ordered.

Dated at Bridgeport, Connecticut, this 29th day of March 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge